**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-0099-WJM

CAROL S. OPITZ,

     Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION,[1]

     Defendant.

---

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Carol S. Opitz ("Opitz") challenges the final decision of Defendant, the Social

Security Administration ("Administration"), denying her application for disability

insurance benefits.  The denial was affirmed by an administrative law judge ("ALJ"),

who ruled that Opitz was not disabled within the meaning of the Social Security Act.

This appeal followed.

For the reasons set forth below, the ALJ's decision denying Opitz's application

for disability insurance benefits is vacated and remanded for further proceedings

consistent with this Order.

---

[1] The Social Security Administration no longer has a commissioner nor a lawful acting
commissioner.  *See* Letter from Thomas H. Armstrong, General Counsel of the Government
Accountability Office, to President Donald Trump (Mar. 6, 2018), *available at* https://
www.gao.gov/assets/700/690502.pdf (last accessed Mar. 27, 2019).  Lacking any other
alternative, the Court *sua sponte* substitutes the Social Security Administration itself as the
proper defendant.

# I. BACKGROUND

Opitz was born in 1953, and was 61 years old on the alleged disability onset date of July 24, 2015. (Administrative Record ("R.") (ECF No. 10) at 73.) In the fifteen years preceding the alleged onset date, Opitz worked at Safeway as a deli manager, a cashier, and a "food clerk." (R. at 53–55, 83.)

Opitz applied for disability insurance benefits on September 2, 2015. (R. at 146–52.) She claimed that she is disabled due to rheumatoid arthritis, fibromyalgia, degenerative disc disease, spondyolisthesis, connective tissue disease, trochanteric bursitis, osteoarthritis, and diabetes. (R. at 180.) Her application was denied on November 16, 2015. (R. at 72.) She requested and received a hearing in front of an ALJ, Kathryn D. Burgchardt. (R. at 92–96, 107.) That hearing took place on May 18, 2017. (R. at 37.) On August 29, 2017, the ALJ issued a written decision in accordance with the Administration's five-step sequential evaluation process.[2] (R. at 13–29.)

At step one, the ALJ found that Opitz had not engaged in substantial gainful activity since July 24, 2015. (R. at 18.)

At step two, the ALJ found that Opitz "has the following severe impairments: fibromyalgia, rheumatoid arthritis, degenerative disc disease, degenerative joint disease of the left knee, diabetes mellitus, bursitis, and obesity." (R. at 18.)

---

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

At step three, the ALJ found that Opitz's impairments did not meet or medically equal the severity of any of the "listed" impairments in the Social Security regulations. (R. at 19–20.)

Before proceeding to step four, the ALJ assessed Opitz's residual functional capacity ("RFC"). The ALJ concluded that Opitz had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except that [Opitz] can push or pull within the light work weight restrictions. [Opitz] also should avoid working around heights, machinery, and should avoid extreme cold. Furthermore, [Opitz] can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds.

(R. at 20.) Then, at step four, the ALJ concluded that Opitz could perform her past relevant work as a customer service representative. (R. at 23.) Therefore, the ALJ did not proceed to step five.

Accordingly, the ALJ found that Opitz was not entitled to disability insurance benefits because she had not been under a disability from July 24, 2015 through the date of the ALJ's decision. (R. at 24.) Opitz appealed to the Social Security Appeals Council (R. at 143–45), which denied review (R. at 1). Opitz then filed this action seeking review of the ALJ's August 29, 2017 decision. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Court reviews the Administration's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is the amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but

less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Administration's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

On appeal, Opitz presents three main arguments for reversal: (1) the ALJ failed to include certain limitations in her residual functional capacity finding; (2) the ALJ failed to properly evaluate Opitz's severe impairments and whether they were the combined medical equivalent of a listed impairment; and (3) the ALJ failed to make required findings about the physical demands of Opitz's past relevant work. The Court will address the first and second arguments, which are dispositive.

### A. Residual Functional Capacity

Opitz argues that the ALJ erred by failing to include any specific manipulative limitations in the RFC. (ECF No. 13 at 19.) The Administration does not respond to this argument.

While the majority of medical evidence focused on limitations of Opitz's neck, shoulders, back, hips, and knees, the record also included evidence that Opitz had difficulty grasping. Opitz testified that she had difficulty grasping and using her hands. (R. at 48–49, 62–64.) The ALJ also recognized that Opitz had "minimal osteoarthritis"

(R. at 21), a symptom of Opitz's fibromyalgia and rheumatoid arthritis (ECF No. 14 at

15), which manifested in Opitz's hands and wrists (*id.*).  The ALJ also observed that

Opitz's pain in her hands and feet had a good response to methotrexate.  (R. at 21.)

On this record, and absent any argument from the Administration, the Court finds

that the ALJ's formulation of the RFC without any express discussion of grasping or

manipulative limitations was not supported by substantial evidence.  The Court will

therefore remand to the ALJ for further consideration of whether a manipulative

restriction is appropriate in light of the medical evidence, Opitz's testimony at her

hearing, and any other non-medical evidence.  *Threet v. Barnhart*, 353 F.3d 1185, 1192

(10th Cir. 2003) (failure to consider all relevant evidence in accordance with the

regulations necessitates remand).

**B.      Severe Impairment Analysis**

In her step three analysis, the ALJ failed to address Opitz's various impairments

in combination, and proceeded to only summarily conclude that Opitz's severe

impairments did not have a combined effect of a listed impairment.  (R. at 19.)  Opitz

challenges the ALJ's conclusion as unsupported because the ALJ did not address any

combination of impairments at step three.  (ECF No. 13 at 13–15.)  The Administration

responds that the ALJ's step three findings are supported by substantial evidence, and

by the ALJ's findings in assessing Opitz's RFC.  (ECF No. 14 at 13–14.)

The ALJ's findings at steps four and five may "provide a proper basis for

upholding a step three conclusion that a claimant's impairments do not meet or equal

any listed impairment."  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

For findings at subsequent steps to justify a conclusion at step three, the ALJ must provide "detailed findings, thoroughly reviewed and upheld by the district court, that confirm rejecting of the listings in a manner readily reviewable." *Id.* at 734. A bare conclusion on an applicant's RFC will likely preclude meaningful review. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

Here, it is undisputed that the ALJ did not discuss at step three whether Opitz's severe impairments *in combination* met or equaled a listed impairment. (R. 19–20.) Therefore, the Court looks to the ALJ's findings at step four to determine whether they support a conclusion that Opitz 's conditions did not equal a listed impairment. As discussed above, the ALJ did not address whether Opitz's RFC should include any manipulative or grasping limitation and the Court will remand for further consideration of the RFC. Given this conclusion, there are not "detailed findings, thoroughly reviewed and upheld by the district court," on which the Administration may rely to support the ALJ's conclusion at step three. The Court will therefore also remand for additional proceedings on whether Optiz's combined impairments are medically equal to a listed impairment.

## C.    Evidence on Remand

Opitz also argues that the ALJ failed to obtain a medical expert ("ME") opinion at step three. The Court will address this argument because it may impact the evidence before the ALJ on remand.

The Administration's rules explain that, although the ALJ is not bound by the medical opinion, "longstanding policy requires that the judgment of a physician (or

6

psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, *3 (July 2, 1996).  SSR 96-6p can be satisfied by the "signature of a state agency medical or psychological consultant on a SSA-831-U5 (Disability Determination and Transmittal Form)."  *Id*.; *see also Wells v. Colvin*, 208 F. Supp. 3d 1162, 1166 (D. Colo. 2016); *Abad v. Colvin*, 2017 WL 57259, at *4 (D. Colo. Jan. 5, 2017).

Opitz contends that because a non-medical professional at the state agency (in Social Security parlance, a single decisionmaker ("SDM")) performed Opitz's initial physical evaluation, the ALJ should have obtained an ME opinion on whether the combination of impairments medically equaled a listing.  (ECF No. 13 at 15; ECF No. 17 at 3–4.)  On Opitz's Disability Determination and Transmittal Form, a psychologist evaluated Opitz's "medically determinable impairments and severity."  (R. at 77–78.) An SDM performed the residual functional capacity analysis (R. at 79–81) and the assessment of vocational factors (R. at 81–84).  It is unclear from the record who drafted the "findings of fact and analysis of evidence" or who concluded that an RFC assessment was necessary.  (R. at 76–77, 79.)  Both the state agency psychologist and SDM signed the determination that Opitz was not disabled.  (R. at 72, 84.)

Opitz claims that the psychologist evaluated only whether she had a "medically determinable mental impairment."  (ECF No. 13 at 15.)  From the record, it appears that the psychologist evaluated both Opitz's physical and mental medically determinable impairments, and whether they medically equaled a listed impairment.  However, on

remand, the ALJ should determine whether the psychologist or SDM made the evaluation, and whether an ME opinion on the issue of medical equivalence is required.

## D.     Additional Arguments

Because the Court vacates and remands for the reasons stated above, the Court need not address the other arguments raised by Opitz.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006).  The Court expresses no opinion as to Opitz's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments.  The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand.  *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.


Dated this 28th day of March, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge